Joann **MANLEY**, individually, and as **Administratrix of the Estate of Raymond Manley, Deceased, Appellants**

v.

Police Lt. Joel **FITZGERALD** and Police Sgt. Michael D. **Young** and Police Officer Joseph **Smith** and Police Officer Rubin **Perkins** and Police Officer Sean **Bascom**.

Commonwealth Court of Pennsylvania.

Argued May 18, 2010.
Decided June 10, 2010.

 

 
 
 
 
 

 
 
 
 
 
 
 
 

 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

Lek Domni, Philadelphia, for appellant, Joann Manley.

Eleanor N. Ewing, Philadelphia, for appellees.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Joann Manley, individually and as administratrix of the estate of her husband, Raymond Manley (together, the Manleys) appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) granting the motion for summary judgment filed by Police Lt. Joel Fitzgerald, Police Sgt. Michael D. Young, Police Officer Joseph Smith, Police Officer Rubin Perkins and Police Officer Sean Bascom (collectively, the Officers) and dismissing the Manleys' suit against them for civil conspiracy, false arrest/imprisonment, malicious prosecution and intentional infliction of emotional distress following their arrest for narcotics violations and the subsequent dismissal of the charges. For the following reasons, we affirm.

On the evening of February 22, 2007, a gunman attempted to assassinate two Philadelphia police officers who had observed a drug deal while sitting in an unmarked police car. The gunman walked up to the car, pulled out his weapon and fired at point-blank range, but he somehow misfired. The police officers, who were unharmed, returned fire, but the gunman escaped. The next evening, Philadelphia police officers saturated the five-block area surrounding the shooting in an attempt to catch the gunman or learn any information about him.

Two of those officers set up a narcotics surveillance on the 5000 block of Tacoma Street and between 10:00 and 11:30 p.m. observed 11 drug transactions at the doorway of 5048 Tacoma Street, just across the street from where the officers were parked. The man at the door, later identified as Levoin Manley (Levoin), the adult son of the Manleys, communicated with his customers by whistling and yodeling, sometimes from inside the house. When the customers came to the door, Levoin went inside the house and returned with the drugs. The house was owned by the Manleys, who lived there with Levoin and their other son. Levoin was living with his parents there because he was under house arrest and electronic monitoring while awaiting trial following a shooting. Joann Manley later testified that she and her husband were at home at the time when the drug deals occurred and that she was doing work in the dining room until approximately 11:00 p.m. Based upon their observations, the two officers obtained a warrant to search the property.

The following evening, the five defendant Officers executed the search warrant and entered the Manleys' home. Levoin and his parents were at home, and they were secured in the living room. The Officers then conducted the search and found a freezer in a room off of the kitchen that contained 315 Ziploc packets of crack cocaine, a 16 gram chunk of crack cocaine, a bottle containing five Oxycodyne pills under the name of another person, over $1,000 in cash, and several hundred new and unused packets. They also discovered a black trash bag inside the backyard barbeque grill containing three large Ziploc bags of marijuana and an additional 21

packets of crack cocaine in one of the upstairs bedrooms. Levoin also had 19 Ziploc bags of marijuana on his person.

At this point, the Manleys allege that the Officers questioned Levoin about the shooting from two nights earlier. Levoin denied any knowledge of the incident, at which time Joann Manley, in her deposition, testified that the Officers threatened that unless Levoin provided them with information about the shooting they would arrest his parents too. When Levoin continued to maintain that he knew nothing of the incident, all three Manleys were placed under arrest and charged with violations of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act of 1972.[1] The Officers contest that they made any threats before placing the Manleys under arrest.

The Manleys were handcuffed and transported in a paddy wagon for processing and then to jail. Bail was set, but they were unable to pay it, so they were taken to a state prison for approximately 10 days until their preliminary hearing. At the preliminary hearing, the prosecutors only presented evidence against Levoin, so the charges against the Manleys were dismissed for lack of evidence. Levoin was later convicted in federal court for possession of crack cocaine with intent to distribute and distribution of crack cocaine.

Following the dismissal of charges against the Manleys, the Commonwealth filed a forfeiture petition against them in the trial court. The petition sought the forfeiture of 5048 Tacoma Street because it was used to commit and/or facilitate violations of the Controlled Substance Act. The Manleys entered into a stipulation and agreement with the Philadelphia District Attorney's Office to settle the forfeiture action. In the stipulation and agreement, the forfeiture petition was withdrawn without prejudice. The Manleys were allowed to keep their house, but they agreed that it was used to commit and/or facilitate violations of the Controlled Substance Act, that the district attorney could prove such violations at trial, that the house would be forfeited if any future violations occurred, and that they would not transfer or lease the property to anyone without the prior permission of the Commonwealth.

After all of these events had occurred, the Manleys instituted the instant civil action against the Officers alleging civil conspiracy, false arrest/imprisonment, malicious prosecution and intentional infliction of emotional distress stemming from their arrest and the circumstances surrounding it. The complaint alleged that the Officers had no probable cause to arrest them and only did so in retaliation because Levoin could not provide any information to the Officers regarding the shooting two nights earlier. The Officers moved for summary judgment, which the trial court granted, holding that all counts were meritless because the Officers had probable cause to arrest the Manleys. This appeal followed.[2]

Both sides agree that the causes of action cannot be maintained against the Officers if they had probable cause to arrest the Manleys for constructive possession of illegal narcotics because the elements of

---

1. Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780–101–780–144.

2. The standard of review of the trial court's order granting summary judgment is limited to deciding whether the court committed an error of law or abused its discretion. *Barra v. Rose Tree Media School District*, 858 A.2d 206 (Pa.Cmwlth.2004). Summary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *In Re Estate of Ross*, 815 A.2d 30 (Pa. Cmwlth.2002).

none of the causes of action could be met if the Officers had probable cause. The Manleys argue that the Officers did not have probable cause that they constructively possessed the confiscated drugs because there was no evidence that either of them ever exercised an intent to control the drugs. Rather, they were merely present in a house that contained narcotics, which is insufficient for constructive possession and would convert constructive possession into a strict liability crime. They contend further that the Officers knew they had no probable cause and arrested them solely because Levoin could not provide them with information concerning the shooting. The Officers contend that they arrested the Manleys solely because they had probable cause to do so, and that even if the alleged threats were true, they are immaterial and the outcome of the case would not change.

■ Normally, in a case such as this one, before we address the merits, we would consider whether the Officers are protected from the Manleys' claims by the tort immunity granted by the Political Subdivision Tort Claims Act.[3] However, the Manleys do not raise this issue at all, and the Officers only raise it for the first time at the very end of their brief without discussing it in any detail. While tort immunity can be raised at any time, *Redland Soccer Club, Inc. v. Department of the Army and Department of Defense of the United States,* 548 Pa. 178, 696 A.2d 137 (1997), because it was not briefed and it is not necessary to resolve this case, we will not address it.

■ Probable cause is a much lower standard than proof beyond a reasonable doubt, the standard that was extant in the above-cited cases. "Rather, probable cause is a reasonable ground of suspicion supported by circumstances sufficient to

warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged." *Turano v. Hunt,* 158 Pa.Cmwlth. 348, 631 A.2d 822, 825 (1993). *See also Bruch v. Clark,* 352 Pa.Super. 225, 507 A.2d 854 (1986). Additionally, if probable cause is shown to exist, the arresting officer's motive, even if malicious, is immaterial. *Turano,* 631 A.2d at 824; *Bruch,* 507 A.2d at 856. Likewise, an acquittal or other adjudication of innocence at a subsequent proceeding does not establish a lack of probable cause at the time of arrest. *Turano; McGriff v. Vidovich,* 699 A.2d 797, 799 (Pa.Cmwlth.1997). Whether the Officers had probable cause to arrest the Manleys is determined by whether the Officers had a reasonable suspicion that the Manleys had constructive possession of illegal narcotics.

■ Constructive possession is "a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Mudrick,* 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). Constructive possession entails the power to control the contraband and the intent to exercise that control. *Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134 (1983). It may be inferred from the totality of the circumstances using circumstantial evidence. *Macolino,* 503 Pa. at 206, 469 A.2d at 134. Constructive possession may be found "in one or more actors where the item in issue is in an area of *joint control and equal access.*" *Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 550 (1992) (emphasis added).

A review of numerous cases shows that the phrase "joint control and equal access"

---

**3.** 42 Pa.C.S. §§ 8501–8564.

is the defining criteria for whether constructive possession exists. In every case examined since *Macolino* in 1983,[4] a defendant who lived in the dwelling where the drugs were found *and* who had access to the specific places in the dwelling where the drugs were located was found to have constructively possessed them, *irrespective* of how many other people also had equal access to the drugs or if the drugs were hidden. These cases include *Macolino* itself (both husband and wife had equal access to bedroom where drugs and paraphernalia were found and so both constructively possessed them); *Mudrick* (drugs found in living room and bedroom; defendant had constructive possession because he and his girlfriend both lived in the house and had equal access to all of it); *Commonwealth v. Carroll,* 510 Pa. 299, 507 A.2d 819 (1986) (defendant, his wife and his step-daughter were staying in a hotel room; defendant constructively possessed drugs found in the pocket of a pair of his wife's pants that were lying on the floor as well as drug paraphernalia located throughout hotel room); *Commonwealth v. Walker,* 874 A.2d 667 (Pa.Super.2005) (defendant lived in basement of home; he

constructively possessed drugs found in basement even though two other people shared the home with him); *Commonwealth v. Aviles,* 419 Pa.Super. 345, 615 A.2d 398 (1992) (defendant leased apartment and subleased certain rooms in it to her sister and brother-in-law; drugs were found in the portion of the apartment where sister and brother-in-law lived, but defendant had constructive possession of the drugs because there were no locks on the interior doors so she had access to those rooms); *Commonwealth v. Parsons,* 391 Pa.Super. 273, 570 A.2d 1328 (1990) (defendant constructively possessed drugs and paraphernalia located in every room of the house he shared with his girlfriend); *Commonwealth v. Santiesteban,* 381 Pa.Super. 18, 552 A.2d 1072 (1989) (defendant lived in house with his girlfriend; he constructively possessed drugs hidden inside a heating grate); *Commonwealth v. Kitchener,* 351 Pa.Super. 613, 506 A.2d 941 (1986) (defendant, who had little or no criminal history, shared house with fugitive boyfriend with long criminal history; defendant constructively possessed drugs found in freezer, under living room chair and under a bed).[5]

---

**4.** The Manleys rely on two pre-*Macolino* cases where the defendant lived in the dwelling where the drugs were found and had access to that area of the dwelling but were nevertheless found not to have constructive possession. They are *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974) and *Commonwealth v. Luddy,* 281 Pa.Super. 541, 422 A.2d 601 (1980). In *Fortune,* the defendant was the owner of the house. She was upstairs when the police searched the house and found a large quantity of drugs lying on the kitchen floor surrounded by several house guests. The Court's rationale was that there was no proof that the owner of the house knew the drugs were on the premises. In *Luddy,* the defendant was one of several adult family members who lived in the home. Drugs were found in a refrigerator drawer, and the defendant was cooking in the kitchen when police arrived. The defendant was

found not to constructively possess the drugs because there were other adults present, and the drugs could have belonged to any of them.

*Fortune* and *Luddy* are at odds with every case since *Macolino* in 1983, all of which held that constructive possession was proven simply by living in the dwelling and having access to the place where the drugs were found. In fact, the dissenting opinion in *Mudrick* concluded that the pre-*Macolino* cases had been overruled *sub silentio. Mudrick,* 510 Pa. at 311, 507 A.2d at 1215. Nothing in our exhaustive review of the case law contradicts this conclusion.

**5.** On the other hand, since *Macolino,* where the defendant either did not live in the dwelling or did not have access to the specific part of the dwelling where the drugs were found, constructive possession has been found not to exist. *See e.g. Valette* (defendant did not con-

■ Applied to the current case, the Officers only needed to reasonably suspect that the Manleys constructively possessed the illegal drugs found in their freezer, grill and bedroom in order to arrest them. It is undisputed that the Manleys owned and lived in 5048 Tacoma Street. It is also undisputed that they had access to their own freezer, their own barbeque grill and the bedroom where Levoin was staying. Additionally, they were both present in the home while Levoin was conducting his drug deals, yodeling and whistling. Because all the requirements for constructive possession have been met, the Officers had probable cause to arrest the Manleys. Furthermore, the law is clear that even if it was true that the *only* reason the Manleys were arrested was in retaliation for Levoin not having information regarding the shooting, this motive, whether proper or improper, was immaterial because probable cause to arrest the Manleys otherwise existed. Similarly, the fact that the charges against the Manleys were dismissed because the Commonwealth only presented evidence against Levoin at the preliminary hearing is completely irrelevant to this proceeding. Simply put, if the Manleys wished to avoid arrest and a possible conviction for constructive possession of illegal narcotics, the only surefire way would have been to prevent their son from conducting his extensive drug dealing operation from their house.

■ Turning now to each individual count in the complaint, it is clear that the trial court correctly held that all must fail as a matter of law. The elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is unlawful. "An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not." *Renk v. City of Pittsburgh,* 537 Pa. 68, 76, 641 A.2d 289, 293 (1994). Here, the Officers had probable cause to arrest the Manleys, so the arrest and imprisonment were lawful.

■ The elements of malicious prosecution are: (1) institution of proceedings against the plaintiff without probable cause and with malice, and (2) the proceedings were terminated in favor of the plaintiff. *Turano,* 631 A.2d at 824. Again, this cause of action fails because the Officers had probable cause to arrest the Manleys.

■ The elements of intentional infliction of emotional distress are: (1) a person who by extreme and outrageous conduct (2) intentionally or recklessly causes (3) severe emotional distress to another. *Carson v. City of Philadelphia,* 133 Pa.Cmwlth. 74, 574 A.2d 1184 (1990). Police officers doing their job by arresting people when they have probable cause to do so certainly falls far short of extreme or outrageous conduct. Likewise, because their other claims fail, the Manleys' civil conspiracy claim fails also.

Accordingly, the order of the trial court is affirmed.

structively possess drugs that were found hidden in kitchen cabinet and under floorboards in bedroom of apartment where defendant was located because there was no proof he lived there); *Commonwealth v. Rodriguez,* 422 Pa.Super. 44, 618 A.2d 1007 (1993) (defendant was found standing in an apartment closet where drugs were found and was holding key to apartment in his hand but did not constructively possess the drugs in the closet because there was no evidence he lived there); *Commonwealth v. Smith,* 345 Pa.Super. 196, 497 A.2d 1371 (1985) (defendant lived with his brother and sister-in-law; defendant did not constructively possess drugs found in home because most of them were in the brother's bedroom and there was no evidence that defendant had access to the bedroom).

## ORDER

AND NOW, this *10th* day of *June*, 2010, the order of the Court of Common Pleas of Philadelphia County dated December 4, 2009, is affirmed.