J-S62024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| BYDIA EVANS, | |
| Appellee | No. 2453 EDA 2013 |

Appeal from the Order Entered July 25, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006939-2013

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 06, 2014**

Appellant, the Commonwealth of Pennsylvania (the Commonwealth) appeals from the order entered on July 25, 2013, granting a motion to quash charges filed against Appellee, Bydia Evans. In granting relief, the trial court determined that the Commonwealth did not establish a *prima facie* case against Appellee and, therefore, dismissed charges of possession of a controlled substance with intent to deliver (PWID), knowing or intentional possession of a controlled substance, possession of a firearm with an altered manufacturer's number, possession of an instrument of crime (PIC), and conspiracy.[1]  Upon careful consideration, we vacate the order, reinstate the criminal charges, and remand for trial.

---

[1] 35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), 18 Pa.C.S.A. § 6110.2, 18 Pa.C.S.A. § 907, and 18 Pa.C.S.A. § 903, respectively.

The trial court summarized the facts and procedural history of this case as follows:

> On April 4, 2013, at 11[:00] a[.]m[.], Philadelphia Police Officer Dunkley and his partner, Officer Burton,[2] received a call for a burglary at 5644 Windale Avenue in Philadelphia. When the officers arrived at 5644 Windale Avenue, they heard an audible alarm and observed that the rear door of the home was open. There was no one on location. Officer Dunkley and his partner walked up to the door, announced themselves as police officers, and, when no one responded, proceeded to enter the home. While inside the home the officers searched the basement, and observed a light in the washroom area. Near the light they observed a small plant, small seeds, possible marijuana residue, and loose bullets.
>
> Officer Bundy and his partner, Officer Baxter, arrived on the scene around 12:30 p.m. to secure the property. While securing the rear of the property, Officer Bundy observed [co-defendant, Lamar] Patterson [(Patterson)] approaching the property in a white Chevrolet. Officer Bundy informed [] Patterson that he and his partner were securing the open property and waiting for the owner to return. [] Patterson informed the police that he could go get his brother, [Appellee], who [] Patterson claimed was the owner of the home, and return with him in 15 minutes. [Appellee] arrived on the scene, in the passenger seat of the car [] Patterson was driving, approximately 20 minutes later. When [] Patterson drove up to the scene, Officers Bundy and Baxter noticed a strong marijuana odor emanating from the vehicle. The officers ordered [Appellee] and [] Patterson out of the car and placed them under arrest. The record does not reflect whether the car was registered to either [Appellee] or [] Patterson. The officers then observed a black and white Nike bag containing clear plastic bags of marijuana in the vehicle. [A later search revealed that the bag contained three sandwich baggies containing marijuana weighing 7.7 grams, 17.2 grams, and 14.5

_____

[2] None of the investigating officers' first names were identified on the record.

grams, respectively.] After arresting [Appellee] and [] Patterson, the police searched the home. Upon searching the home the police […] recovered three letters in [Appellee's] name [and addressed to Appellee at the Windale address] in the basement closet[.] [In the same closet, police recovered two sandwich baggies of marijuana – one containing 7.3 grams and the other containing 28.5 grams, two freezer bags of marijuana – one containing 454.4 grams and the containing 35.6 grams, as well as, a black .357 Magnum Ruger with an obliterated serial number and a silver Smith and Wesson .38 caliber firearm. Police also recovered three small marijuana plants and a digital scale with marijuana residue on it from the basement.]

On April 4, 2013, [Appellee] was arrested and charged with [the aforementioned charges].

On May 28, 2013, the Philadelphia Municipal Court had a preliminary hearing and all charges were held for [trial].

On [June 10, 2013], [Appellee] filed a motion to quash [] all charges. At a hearing held on [July 25, 2013], [the trial court] granted the motion to quash [] all five of the charges.

On August 22, 2013, the Commonwealth filed a notice of appeal, as well as a [Pa.R.A.P.] 1925(b) statement of errors complained of on appeal[.] [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on November 26, 2013.]

Trial Court Opinion, 11/26/2013, at 1-2 (record citations, superfluous capitalization, and headings omitted).

On appeal, the Commonwealth presents the following issue for our review:

Properly viewed in the light most favorable to the Commonwealth, did the evidence at the preliminary hearing establish a *prima facie* case of [PWID], knowing or intentional possession of a controlled substance, possession

of a firearm with altered manufacturer's number, [PIC], and conspiracy?

Commonwealth's Brief at 4.

The Commonwealth asserts "the evidence at the preliminary hearing, and the reasonable inferences arising therefrom, permitted a finding of a *prima facie* case that [Appellee] had constructive possession of the drugs and the gun[s] and conspired with his brother [to commit the offenses with which he was charged and, therefore,] the lower court abused its discretion by quashing the charges." *Id.* at 10. The Commonwealth argues that it submitted evidence that Appellee was in constructive possession of the contraband found in the basement closet at 5644 Windale Avenue, because there were "multiple letters addressed to" Appellee "found in the same closet as the gun with the altered manufacturer's number and several bags of marijuana." *Id.* at 13. The Commonwealth also asserts that it presented evidence that Appellee had dominion and control over the residence because: (1) co-defendant "Patterson told police that [Appellee] owned the home[,]" and; (2) Appellee's official criminal court file listed 5644 Windale Avenue as his address. *Id.* at 14.

The Commonwealth further argues that it "produced sufficient evidence that [Appellee] constructively possessed the marijuana in the car[,]" because: (1) Appellee was in the car and had access and control of the found narcotics; (2) "the fact that there was a strong odor of marijuana inside the car and the fact that the drugs were in plain view indicate [Appellee] was aware of the drugs[,]" and; (3) large quantities of marijuana

found inside Appellee's residence indicates he was involved in the distribution of marijuana. *Id.* at 15. The Commonwealth distinguishes the cases the trial court relied upon in granting relief, noting that those cases "addressed the sufficiency of the evidence to support a conviction, not the sufficiency of the evidence to establish a *prima facie* case." *Id.* at 16.

Finally, with regard to the conspiracy charge, the Commonwealth asserts that "Patterson and [Appellee] were brothers[, ...] they were in the car together, and had constructive possession of the drugs inside the car." *Id.* at 18.

Our standard of review is well-settled:

> The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law as to which this Court's review is plenary.
>
> At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. Moreover, inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

*Commonwealth v. Nieves*, 876 A.2d 423, 424 (Pa. Super. 2005).

Hearsay testimony is permissible at a preliminary hearing. ***Commonwealth v. Tyler***, 587 A.2d 326, 328 (Pa. Super. 1991) (citation omitted). "[T]here is no need for an affirmative showing of witness unavailability or unreliability in order to allow hearsay testimony at a preliminary hearing." ***Id.*** Moreover, "credibility is not an issue at a preliminary hearing." ***Id.*** However, "our Supreme Court [has] held that where, at a preliminary hearing, the Commonwealth presents only hearsay testimony regarding a victim's account of an alleged criminal incident, there is insufficient evidence to establish a *prima facie* case." ***Nieves***, 876 A.2d at 425, *citing* ***Commonwealth ex rel. Buchanan v. Verbonitz***, 581 A.2d 172 (Pa. 1990) (plurality); ***compare Tyler***, 587 A.2d at 328 (noting that no error occurred at the preliminary hearing because evidence in addition to hearsay evidence was presented).

Appellant was charged with four possessory crimes.[3] First, PWID statutorily prohibits:

> the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

---

[3] We will examine the conspiracy charge after reviewing the possessory offenses.

The crime of knowing or intentional possession of a controlled substance prohibits:

> [k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner[.]

35 P.S. § 780-113(a)(16).

The statute setting forth the crime of possession of a firearm with altered manufacturer's number provides that:

> No person shall possess a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated.

18 Pa.C.S.A. § 6110.2.

Finally, the Commonwealth charged Appellee with PIC. "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907. Instruments of crime include "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have" which "includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon." *Id.*

Regarding possession, a person may have actual or constructive possession of contraband. Constructive possession is defined as follows:

> [c]onstructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Muniz*, 5 A.3d 345, 348-349 (Pa. Super. 2010) (citation omitted). "Additionally, it is possible for two people to have joint constructive possession of an item of contraband." *Commonwealth v. Hopkins*, 67 A.3d 817, 820-821 (Pa. Super. 2013) (citation omitted).

Police recovered evidence in this case from 5644 Windale Avenue and the vehicle in which Appellee was a passenger. We will examine the recovery areas separately. First, with regard to the residence, at the preliminary hearing, the Commonwealth presented the testimony of Officer Bundy. Officer Bundy testified that he reported to 5644 Windale Avenue to secure the property after a potential burglary. N.T., 5/28/2013, at 17. Co-defendant, Patterson, arrived at the property and told Officer Bundy "that he could go get the owner, who is his brother" and "[a]bout 20 minutes later he arrived [with Appellee]." *Id.* at 17-18. When asked if Officer Bundy spoke with the owner of property at 5644 Windale, he responded: "I don't know who the owner is. All I know is that [Appellee] lives at the property. I don't know if he owned the property or not." *Id.* at 34. All of the parties stipulated that Officer Barber, who later recovered contraband from the residence following Appellee's and Patterson's arrest, would have testified

that "there was no indicia of residency of any kind relating to [] Patterson taken from that property." *Id.* at 42. The parties also stipulated that, in a basement closet at the subject residence, police recovered "letters in the name of [Appellee] addressed to 5644 Windale Avenue and this was in the same closet in which [] two handguns and some narcotics were recovered." *Id.* at 44-45. The serial numbers were obliterated on one of the firearms. *Id.* at 44. Police also recovered a digital scale with marijuana residue from the residence. *Id.* at 47. The Commonwealth presented an expert who opined that all of the narcotics found "were possessed with the intent to distribute and not for personal use" "based upon the amount and way they were packaged." *Id.* at 50. At the conclusion of the preliminary hearing, the Commonwealth "mark[ed] and move[d] the Quarter Sessions file [into the record] for [Appellee] showing an address of 5644 Windale Avenue[.]" *Id.* at 55.

Here, the trial court determined:

> In the instant case, the Commonwealth failed to demonstrate that [Appellee] had the knowledge, intent, or the ability to control the contents of the home or the vehicle. At the motions hearing, the Commonwealth asserted that it had made a prima facie showing of constructive possession of the drugs found inside the home by showing that [Appellee] resided at the house in question. No such showing was made. [Appellee] at all times was only observed outside of the home. Additionally, the door of the home was left opened and the area was unsecured before the officers arrived on the scene. Further, police stated that [Appellee] was taken into custody immediately when he arrived on scene, without confirmation of his residence. The Commonwealth's primary evidence of

residency is the three letters found in the basement closet. The Commonwealth also relies on [] Patterson's unsubstantiated statements that [Appellee] was the owner of the home. These observations and statements, without more, are insufficient to show that [Appellee] resided in the home, and thus constructively possessed the drugs inside. Moreover, even if the Commonwealth had provided sufficient evidence of residency, mere residency does not establish knowledge of contraband in a home; nothing presented at the preliminary hearing suggests that, if [Appellee] does reside in the home, he is the sole resident and thus the only person who could possibly be responsible for whatever contraband is found inside. **Com[monwealth] v. Fortune**, 318 A.2d [] 327, 329 ([Pa.] 1974)("There is no evidence that the appellant had any knowledge of the presence of drugs in her home prior to the arrival of the police. The appellant's residency in the home does not establish any such knowledge."). Thus the Commonwealth failed to make out a *prima facie* case of constructive possession, and the charges were properly quashed.

Trial Court Opinion, 11/26/2013, at 6-7. We disagree.

Initially, we note the trial court's reliance on **Fortune** was flawed. In **Fortune**, while effectuating a search warrant, police entered a residence with multiple people inside. Police found packets of narcotics on the ground in a hallway off the first-floor kitchen. Three men and one woman were in the living room on the same floor. Fortune, "who was wearing a robe, came downstairs, went through the living room and entered the kitchen where the arresting officer was picking up the packets from the floor." **Fortune**, 318 A.2d at 328. No drugs were found on her person. Fortune "was arrested after the police found letters addressed to her at the address being searched and concluded that she was the residen[t] of the premises." **Id.** In

determining that there was insufficient evidence to convict Fortune of possession of the narcotics,[4] our Supreme Court concluded:

> When the crime charged is the illegal possession of narcotic drugs, the presence of a person at the scene, without a consideration of the totality of the circumstances, does not prove the crime.
>
> In this case, no narcotic drugs were found on the person of [Fortune]. None were found anywhere else on the premises. Those that were found were not in a place normally accessible only to a resident of a home. The drugs were found in plain view, strewn on the kitchen floor. Four persons were on the first floor and had more immediate access to the kitchen than did [Fortune] who was upstairs when the police broke in 'within seconds' after their arrival. There is no evidence that [Fortune] had any knowledge of the presence of the drugs in her home prior to the arrival of the police. [Fortune]'s residency in the home does not establish any such knowledge. We cannot assume that a resident of a home, where guests are present, knows of the full contents of the premises.

*Id.* at 329. As the Court made clear, possession must be viewed in consideration of the totality of the circumstances.

In ***Fortune***, the narcotics could have been attributed to anyone located in the house at the time of the search and there was no proof that Fortune knew there were drugs on the premises. After ***Fortune*** was decided, the Commonwealth Court issued an opinion in ***Manely v.***

_____

[4] We note that Fortune was appealing her conviction based upon insufficient evidence to support possession of narcotics beyond a reasonable doubt. Whereas, in this case, the Commonwealth has a lesser burden in establishing a *prima facie* case.

*Fitzgerald*, 997 A.2d 1235 (Pa. Cmwlth. 2010) [5] which examined the history of constructive possession to conclude that "[i]n every case examined since [] 1983, a defendant who lived in the dwelling where the drugs were found **and** had equal access to the specific places were the drugs were located was found to have constructively possessed them, **irrespective** of how many other people also had access to the drugs or if the drugs were hidden." *Manely*, 997 A.2d at 1240 (emphasis in original). Under *Manley*, and the Superior Court decisions discussed therein, we conclude that the Commonwealth adduced sufficient evidence to establish a *prima facie* case of constructive possession against Appellee with respect to the drugs and firearms located in the house.

Moreover, the case *sub judice* has similar facts to our decision in *Commonwealth v. Bruner*, 564 A.2d 1277 (Pa. Super. 1989). In *Bruner*, this Court found sufficient evidence to support Bruner's narcotics convictions beyond a reasonable doubt, a more demanding standard than setting forth a *prima facie* case. In that case, police executing a search warrant found narcotics in a first floor bedroom of the subject residence. After Brunner was arrested, he denied living in that particular bedroom. In reviewing the

_____

[5] While decisions of the Commonwealth Court are not binding upon this Court, we may elect to follow the Commonwealth Court decisions if we find the rationale persuasive. *Beaston v. Ebersole*, 986 A.2d 876, 881 (Pa. Super. 2009). In rendering its decision in *Manely*, the Commonwealth Court primarily examined Superior Court decisions. Thus, we find *Manely* persuasive.

evidence to conclude it was sufficient to support Bruner's narcotics convictions this Court opined:

> We agree with the lower court that the evidence established [Bruner's] constructive possession of the contents of the first floor apartment. As the lower court pointed out, the search of that apartment yielded two postal customer receipts containing [Bruner's] name, various envelopes addressed to [Bruner] at that address, a traffic citation made out to [Bruner], and a civil complaint listing [Bruner] as plaintiff at the address at which the evidence was recovered. In addition, testimony was offered by the victim of the assault that [Bruner] lived at the residence in issue and that he (the victim) had met with [Bruner] there on several occasions. This evidence was sufficient to establish [Bruner's] constructive possession under section 780–113.

*Bruner*, 564 A.2d at 1285.

Here, the trial court's rationale for rejecting a *prima facie* case of constructive possession turns logic on its head. The trial court reasoned, in part, that Appellee was only observed outside of the Windale residence and that police took Appellee into custody without confirming his residence. The record, however, shows that Appellee received mail and listed Windale as his address as shown in the quarter session files. More troubling, however, is the trial court's observation that the door of the home was open and the area unsecured before police arrived. By this, the trial court seems to suggest that some unidentified person or persons broke into the Windale house and stashed guns and drugs inside the residence. Our standard of review requires that we view the facts in the light most favorable to the Commonwealth, which the trial court clearly has not done.

- 13 -

Viewing the totality of the evidence of this case in the light most favorable to the Commonwealth, we find there was sufficient evidence to support a *prima facie* case regarding the offenses lodged against Appellee in relation to the contraband recovered from the residence. The Commonwealth presented evidence that Appellee owned or, at the very least, lived at the residence. Appellee's brother, Patterson, stated that Appellee owned the subject property. Furthermore, the Commonwealth, without objection, entered into the record Appellee's criminal file listing 5644 Windale Avenue as his official address. The Commonwealth may rely on hearsay at the preliminary hearing. *Tyler*, 587 A.2d at 328. The Commonwealth also presented evidence that there was no indicia that Patterson resided at the property. N.T., 5/28/2013, at 51. Furthermore, police found multiple packages of marijuana, a digital scale, and firearms hidden in a basement closet in close proximity with mail addressed to Appellee at that residence. Based on all of the foregoing, the Commonwealth established "sufficient probable cause to warrant the belief that the accused" exercised "conscious dominion" over the recovered firearms and narcotics held for sale. *Nieves*, 876 A.2d at 424; *Muniz*, 5 A.3d at 348-349. As such, it was error for the trial court to quash the charges related to the contraband recovered from the residence.

Next, we turn to the narcotics recovered from the vehicle in which Appellee was riding. The trial court opined that quashal was proper because:

[M]ere presence in a vehicle is not sufficient to establish possession of contraband inside the vehicle. **Com[monwealth] v. Townsend**, 237 A.2d 192, 195 ([Pa.] 1968); **see also Com[monwealth] v. Spencer**, 621 A.2d 153, 156 (Pa. Super. 1993) ("The evidence failed to establish that [Spencer] knew cocaine was present in the vehicle and that she intended to exercise control over the contraband. It appears that [Spencer's] guilt was proven by her mere association with [co-defendant], and such a verdict is unacceptable.") [Appellee] was a passenger in the vehicle. There is no evidence to whom the vehicle was registered. There is no evidence of agreement between [Appellee] and [] Patterson. The sole connection between [Appellee] and [] Patterson is that they arrived at the scene together and [] Patterson claimed to be [Appellee's] brother. "[T]he record simply does not demonstrate that [Appellee] knew there were drugs within the car, and, absent such evidence" there can be no *prima facie* showing of possession. [**Spencer**, 621 A.2d at 155]. Although officers noted a strong odor of marijuana emanating from the car, the smell alone is not sufficient to presume [Appellee] knew there was contraband in the vehicle. Taking the evidence as presented, and making all reasonable inferences in the light most favorable to the Commonwealth, a *prima facie* case of constructive possession with respect to [Appellee] and the contents of the vehicle was not established, and the charges were properly quashed.

Trial Court Opinion, 11/26/2013, at 6.

We disagree. While mere presence will not suffice solely to establish constructive possession, "[a] defendant's mere presence is at least a factor to be considered as part of the totality of circumstances proving knowledge of the presence of the contraband which is essential to a finding of intention to exercise control over the substance." **Commonwealth v. Harris**, 397 A.2d 424, 429 (Pa. Super. 1979). There is no dispute that Appellee was in the car at issue. "Upon arriving at the scene [… police] smelled the strong

odor of marijuana emanating from the car" and "observed the bag in the car, black and red Nike bag containing clear plastic baggies with various types of leafy substances inside." N.T., 5/28/2013, at 18. "[T]he [Nike] bag was open in plain view with the contents clearly being visible." *Id.* at 27. The bag was on the backseat of the vehicle. *Id.* at 28. The marijuana was in plain sight and emitted a strong odor, thus, we conclude that the trial court erred by determining that there was no evidence that Appellee did not know the narcotics there were drugs inside the car.[6]

Additionally, this case is distinguishable from *Townsend* and *Spencer*. In *Townsend*, police recovered a firearm that was partially concealed under the front passenger seat of a vehicle driven by another man. There were other occupants in the car. Upon review, this Court determined that there was insufficient evidence to show that Townsend knew the firearm was in the vehicle because there was no evidence of where Townsend was sitting in relation to the gun and there were multiple people in the vehicle. Likewise, in *Spencer*, Spencer was a passenger in a car where police saw a bag of narcotics sticking out of a driver-side armrest compartment. A scuffle ensued between the driver and police, wherein the

_____

[6] Furthermore, Officer Bundy testified that he did not smell the odor of marijuana emanating from the vehicle at issue or Patterson's person when Patterson first approached the residence alone. N.T., 5/28/2013, at 20-22, 28-29. Officers only smelled marijuana and noticed the Nike bag in the backseat when Appellee was in the car. *Id.* at 23-39.

driver sped away in the car and then threw the narcotics out the window. In that instance, because the narcotics were entirely within the control of the driver on his side of the vehicle, we determined that "[t]he evidence failed to establish that [Spencer] knew cocaine was present in the vehicle and that she intended to exercise control over the contraband." **Spencer**, 621 A.2d at 156.

Here, there is no evidence that Patterson, as the driver of the car, exercised exclusive control over the narcotics. The vehicle was not registered to Patterson. N.T., 5/28/2013, at 51. Moreover, as discussed *infra*, the Commonwealth also established a *prima facie* case for conspiracy. Furthermore, having already established that the Commonwealth set forth a *prima facie* case for the marijuana found in the residence, we note that the police uncovered the exact same controlled substance, in quantities packaged and held for sale, in the vehicle. In view of the totality of circumstances, we reject Appellee's assertion that he did not know there was marijuana in the vehicle in which he was riding. For all of the foregoing reasons, we conclude the Commonwealth established a *prima facie* case for the narcotics charges lodged against Appellee in relation to the contraband recovered from the vehicle.

Finally, the Commonwealth also charged Appellee with conspiracy, which is defined as follows:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903.

While more than mere association must be shown,

> the essence of criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. By its very nature, the crime of conspiracy is frequently not susceptible of proof except by circumstantial evidence. And although a conspiracy cannot be based upon mere suspicion or conjecture[,…] the relationships, conduct or circumstances of the parties[] and the overt acts on the part of the coconspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed.

*Commonwealth v. Stetler*, 95 A.3d 864, 887 (Pa. Super. 2014) (citation omitted). "The Commonwealth can establish the existence of an agreement by circumstantial evidence, and need not rely on direct evidence." *Id.* This Court has indicated that four factors are to be utilized in deciding if a conspiracy existed: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." *Commonwealth v. Nypaver*, 69 A.3d 708, 715 (Pa. Super. 2013).

In this case, the trial court determined that "[t]he only connection between [Appellee] and [] Patterson is that they arrived at the scene together and [] Patterson claimed to be [Appellee's] brother." Trial Court Opinion, 11/26/2013, at 7. These facts, however, clearly satisfy the first and third factors of the test above. Moreover, the narcotics found in the vehicle were in plain view and emitted a strong odor and, as previously discussed, were within joint constructive possession of Appellee and Patterson. Viewing the evidence in the light most favorable to the Commonwealth's case and giving all reasonable inferences from the record, there was sufficient probable cause to warrant the belief that Appellee engaged in a conspiracy with Patterson. **Nieves**, 876 A.2d at 424.

Accordingly, we conclude that the Commonwealth set forth sufficient evidence to establish a *prima facie* case for all five of the charges against Appellee. Hence, we vacate the order quashing the criminal informations, reinstate the original charges against Appellee, and remand the case for trial.

Order vacated. Criminal charges reinstated. Case remanded for trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014