IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elwood Small,                           :
                    Appellant           :
                                        :
          v.                            : No. 149 C.D. 2016
                                        : Submitted:  July 1, 2016
Debra Trees, Rodger Mason,              :
James Petaccio, Joseph Visinky,         :
Annette Kowalewski, Richard Ellers,     :
Jawad Salameh, Prison Health            :
Services, Inc. and Pennsylvania         :
Department of Corrections              :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI              FILED: July 27, 2016


          Elwood Small (Small) appeals *pro se* from two orders of the Court of
Common Pleas of Somerset County (trial court), one granting the motion for
summary judgment filed by Debra Trees (Trees), Joseph Visinky (Visinky),
Annette Kowalewski (Kowalewski) and the Pennsylvania Department of
Corrections (collectively, DOC Defendants), and the other granting the motions for
summary judgment filed by Rodger Mason (Mason) and James Petaccio
(Petaccio).  Finding no error in the trial court's decision, we affirm.

## I.

In July 2008, Small filed an eleven-count class action complaint, later amended twice, in the trial court, naming as defendants the DOC Defendants, Mason, Petaccio, Richard Ellers,[1] Jawad Salameh and Prison Health Services, Inc.[2] involving the treatment he received for a left shoulder injury that he sustained in December 2004 when he slipped and fell while working in the kitchen at the State Correctional Institution (SCI) at Retreat where he was incarcerated at the time. He underwent surgery at Somerset Hospital and was transferred to SCI Houtzdale in 2005 where he was placed on "sick call" and was taken to physical therapy three times a week.

Small's complaint alleges the following: that on July 6, 2006, Debra Youkin (Youkin), a Correctional Health Care Administrator at SCI Houtzdale, emailed Visinky, also a Correctional Health Care Administrator with the Department of Corrections, and Trees, a transfer coordinator and employee of the Department of Corrections, inquiring whether Small could be transferred to SCI Laurel Highlands after surgery because Small needed extensive physical therapy. Trees responded that SCI Laurel Highlands was full of therapy cases and that the beds could be used more wisely. The next day, Youkin sent long-term care referral forms to Trees and Kowalewski, a Correctional Health Care Administrator and

---

[1] There is no further reference to Richard Ellers in the trial court's opinion, in any of the briefs provided to this Court or otherwise.

[2] On May 23, 2011, Jawad Salameh, M.D. and Prison Health Services, Inc. were dismissed from the matter.

employee of the Department of Corrections, indicating that Small required rehabilitation and physical therapy.

On July 25, 2006, Small was transferred to SCI Somerset to have arthroscopic surgery performed on his left shoulder by Jonathan Kates, M.D. (Dr. Kates). Dr. Kates observed that Small's left shoulder had forward flexion to 120 degrees and abduction at 70 degrees, and ordered that his arm remain in a sling for 10 days and that he start pendulum exercises the next day and physical therapy for passive range of motion as soon as possible. SCI personnel issued Small instructions depicting the requisite pendulum exercises and he was directed to perform the exercises in his cell and to see the physical therapist the following week. Visinky contacted Youkin who agreed to complete Small's physical therapy after being told that Small did not need intensive physical therapy.

Following surgery, in August 2006, Small was transferred back to SCI Houtzdale where he had a hearing on a misconduct charge for failing a random drug test and was placed in the Restricted Housing Unit (RHU) for 90 days. Small was then transferred to the RHU in SCI Laurel Highlands, where physical therapy personnel would visit him in his cell.

While in the RHU, Small was examined by Dr. Kates and examined and treated by Mason, a physical therapist. Mason was a subcontractor with Petaccio's company, Petaccio Rehabilitation Services, LLC (Petaccio Rehabilitation). Petaccio Rehabilitation, in turn, was a subcontractor with Prison

Health Services, which contracted with the prison system to provide medical services to inmates.[3]

After examining Small, Mason directed that he receive moist heat and range of motion therapy once out of the RHU, and a moist heating pad was provided to Small. In September 2006, Dr. Kates met with Small and opined that his active range of motion did not show improvement from pre-operation and, thus, ordered continued physical therapy. In September 2006, Mason visited Small and opined that his shoulder would stiffen up if he did not receive physical therapy. From September 2006 to September 2007, Small received physical therapy treatments three times a week in the physical therapy department at SCI Laurel Highlands. In May 2007, Mason examined Small and determined that his range of motion could not be improved with further physical therapy.

---

[3] Petaccio describes the relationship amongst the parties in a footnote in his brief:

> James Petaccio, a licensed physical therapist, owned a limited liability company, Petaccio Rehabilitation Services, LLC ("Petaccio Rehabilitation"). Petaccio Rehabilitation was a subcontractor with Prison Health Services ("PHS"), which in turn was a contractor with the prison system to provide medical services to inmates. Petaccio Rehabilitation hired other therapists on a contract basis to provide physical therapy services. Roger [sic] Mason, a licensed physical therapist, had a contract with Phoenix Rehabilitation Services, LLC ("Phoenix"). Phoenix in turn had a contract with Petaccio Rehabilitation. Therefore, Mason was a subcontractor with Petaccio Rehabilitation and not an employee of Petaccio Rehabilitation or James Petaccio.

(James Petaccio's Brief at 12, no. 3.)

4

Small alleges in his complaint that subcontractor Mason was negligent by failing to ensure that Small was being given his prescribed therapy when he was in the RHU. He also alleges that contractor Petaccio is liable for the alleged breach of duty by Mason under the doctrine of respondeat superior because Mason was hired as an independent contractor by Petaccio, who was a subcontractor hired by Prison Health Services, Inc. to provide physical therapy to inmates housed at SCI Laurel Highlands. He contends that the DOC Defendants were negligent because they were responsible for his medical care, making them liable for the negligent care provided by Petaccio and Mason.[4]

---

[4] The medical-professional liability exception to sovereign immunity waives immunity for a Commonwealth party for "[a]cts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." 42 Pa.C.S. §8522(b)(2).

The exception has two distinct waivers of immunity. The first part of the exception imposes liability for health care employees of a Commonwealth agency medical facility. A Commonwealth agency is defined as any executive agency or independent agency. 42 Pa.C.S. §102. That definition is a broad one and includes all Commonwealth-operated medical facilities, operated either directly or indirectly.

The second waiver is for a Commonwealth party who is a doctor, dentist, nurse or related health care personnel. A "Commonwealth party" is defined as "[a] Commonwealth agency and any employee thereof…." 42 Pa.C.S. §8501. At first glance, it appears that these waivers are the same – aren't doctors included in the first part of the exception waiving immunity for "health care" employees of a Commonwealth agency? The answer is not always. As in the private sector, not all health care professionals are on the payroll of the institution where they treat patients, but have a variety of relationships with the institution that do not fall within the employer-employee category.

Illustrative of a non-employment relationship held to fall within the exception is that set forth in *Walls v. Hazleton State General Hospital*, 629 A.2d 232 (Pa.Cmwlth.1993), where an action was brought by a patient alleging that he received negligent medical care from a doctor employed by a medical group retained as an independent contractor to provide orthopedic medical services to a state hospital. While the doctor was not an "employee" under the first part of the exception because he was not an employee of a Commonwealth agency, he was an
**(Footnote continued on next page…)**

5

The defendants filed various motions and objections and, in response, Small filed motions seeking a determination as to the necessity of filing a certificate of merit, and motions for extension of time for filing a certificate of merit as required by Pennsylvania Rule of Civil Procedure No. 1042.3(a)[5] to bring

---

**(continued…)**

employee of a Commonwealth party as that term is defined. Unlike the traditional definition where an employee is someone on the payroll, an employee of a Commonwealth party is defined as "[a]ny person who is acting or has acted on behalf of the government unit whether on a temporary or permanent basis…." 42 Pa.C.S. §8501. Because the doctor that caused the patient's injuries was acting on behalf of the government, he fell within the exception. Because the physician was within the ambit of the exception, the limitation on damages applicable to Commonwealth parties limited the liability of the medical group that provided the orthopedic care.

[5] Rule No. 1042.3 of our civil procedural rules governing professional liability claims provides that a certificate of merit must be filed with, or within 60 days after, the filing of a complaint in any action asserting a professional liability claim "based upon an allegation that a licensed professional deviated from an acceptable professional standard." Pa.R.C.P. No. 1042.3(a); *see generally Womer v. Hilliker*, 908 A.2d 269, 275-76 (Pa. 2006) (discussing the policies behind rules of civil procedure governing professional liability claims). The certificate must aver:

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

**(Footnote continued on next page…)**

a medical malpractice claim. In 2009, Small issued certificates of merit for Mason, Prison Health Services, Salameh, Petaccio, Visinky, Kowalewski, and Trees. The certificates of merit stated that an appropriate licensed professional supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited fell outside of the acceptable standard of care and proximately caused Small's injury. When requested by the trial court to deliver the professional opinions, Small failed to do so.[6]

Petaccio then filed a motion for *in camera* review regarding the sufficiency of Small's certificates of merit. After hearing argument, the trial court granted Petaccio's motion for *in camera* review and ordered Small to supply all professional opinions for all defendants indicating support for a malpractice claim. Small appealed to the Superior Court of Pennsylvania, and the appeal was quashed.

---

**(continued…)**

Pa.R.C.P. No. 1042.3(a).

[6] In its opinion, the trial court states in a footnote that:

> The DOC Defendants have introduced a number of expert opinions, ostensibly issued to them by [Small], as exhibits attached to the Motion of Summary Judgment at issue. [Small] did not issue us these opinions. We ordered [Small] [to] supply us all professional opinions for all Defendants indicating support of the professional malpractice claim on June 2, 2009. [Small] did not do so. Instead, [Small] sent us a letter on August 6, 2010. This letter indicated the opinions were enclosed, however, there were no such opinions in the letter.

(Trial Court's Opinion at 16, no. 15.)

In June 2010, Mason filed a petition to dismiss and in August 2010, Small sent the trial court a letter stating that he was enclosing an expert opinion to support his certificate of merit for defendants Salameh and Prison Health Services, Inc.; however, no such certificate of merit was enclosed.

The discovery period lasted from 2008 to 2015. During this period, in 2013, Mason and Petaccio filed motions for summary judgment. In January 2015, the trial court granted Mason and Petaccio's motions for summary judgment and dismissed the claims against them. In February 2015, the DOC Defendants filed their motion for summary judgment, to which were attached the expert affidavits that Small had not previously provided to the trial court from Alan Kushner, an unlicensed chiropractor; Stephen B. Scher, M.D.; Charolette Basenfelder, R.N.; and Janika Jordan, a physical therapist.

The trial court granted the motions and dismissed Small's claims against the DOC Defendants, finding that Small's allegations of negligence and not professional negligence were insufficient to avoid summary judgment. The trial court also found that respondeat superior liability was appropriate for the DOC itself, but that the claim would be insufficient to proceed if there was no claim against the other DOC Defendants. Moreover, the trial court found that Small failed to present sufficient evidence to prove that the DOC Defendants' acts or omissions increased the risk of harm to a person in Small's position, as well as the elements of "duty of care" and "extent of injury."

The trial court also determined that Janika Jordan and Charolette Basenfelder's affidavits were insufficient because Jordan's affidavit failed to address the DOC Defendants' actions and inactions and Basenfelder's affidavit failed to render an opinion on causation or any opinion regarding Trees. It explained that "even if these [a]ffidavits did not fail on their face, they are also woefully deficient along with the rest of the [a]ffidavits provided." (Trial Court's Opinion at 17.) The trial court also noted that:

> At [Small's] Deposition on August 17, 2012, [Small] admitted: (1) he only has expert [a]ffidavits, as opposed to Expert Reports; (2) [Small] exclusively showed these "experts" select parts of his medical records; (3) Each [a]ffidavit was typed and drafted by [Small]; (4) When the [a]ffidavits were returned to him by [Small's] brother, someone had filled in the blanks on the [a]ffidavits and there were signatures on the signature lines; (5) The only thing that [Small] knows concerning the [a]ffidavits is that he gave some materials to his brother and in return he got filled in [a]ffidavits; (6) [Small] has not checked out any of the "experts" credentials; and (7) the [a]ffidavit of Stephen Scher, M.D. was only offered against Dr. Solomon [sic], Mr. Scher was an inmate at the prison, and he has since passed away…. Finally, [Small] further admitted to us that these were the same Expert Reports submitted in his federal case where the United States District Court for the Western District of Pennsylvania dismissed his claims for insufficient expert evidence and the United States Court of Appeals for the Third Circuit upheld the decision on appeal.

(*Id.* at 17-18) (citations omitted). The trial court concluded that because Small suffered an injury to his shoulder requiring surgery, "this is a case where there is a

possibility that the alleged harm (loss of [range of motion]) could have occurred even in the absence of negligence." (*Id.* at 15.) This appeal followed.[7]

## II.

## A.

At the outset, Small argues that this Court lacks jurisdiction to hear this appeal pursuant to Section 742 of the Judicial Code, 42 Pa.C.S. §742.[8] We disagree. This Court has exclusive jurisdiction, under Section 762(a)(1) of the Judicial Code, 42 Pa.C.S. §762(a)(1), over appeals from final orders of the courts of common pleas against the Commonwealth, including any officer thereof acting in his official capacity. Small has brought suit against the DOC as well as several of its officers; as such, we have jurisdiction over this appeal.

---

[7] Our review of a trial court order granting summary judgment is limited to determining whether the trial court abused its discretion or committed an error of law. *Manley v. Fitzgerald*, 997 A.2d 1235, 1238 n.2 (Pa. Cmwlth. 2010). Summary judgment may only be granted when, after examining the record in the light most favorable to the non-moving party, the record clearly demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

[8] 40 Pa.C.S. §742 provides:

> The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

**B.**

As to the merits, Small argues that the trial court erred in granting Mason and Petaccio's as well as the DOC Defendants' motions for summary judgment because, among other reasons, his certificates of merit did not satisfy the requirements of Pa.R.C.P. No. 1042.3(a). Pursuant to Pa.R.C.P. No. 1042.3(a), before a case for medical professional negligence can continue, a certificate of merit has to be filed with the trial court within 60 days. In this case, while a certificate of merit was filed, it did not satisfy that requirement for the reasons set forth in the portions of the trial court opinion that we previously quoted. Because Small has not satisfied Pa.R.C.P. No. 1042.3(a), for that reason alone, the trial court properly granted the motion for summary judgment.

As to the remaining issues, after reviewing the record, the parties' briefs and applicable law, these issues were raised before the trial court and were ably resolved in the thorough and well-reasoned opinion of the Honorable David C. Klementik of the Court of Common Pleas of Somerset County. We affirm based on that opinion.

_____
DAN PELLEGRINI, Senior Judge

Judge Cosgrove did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elwood Small, :
         Appellant :
                :
       v. : No. 149 C.D. 2016
                :
Debra Trees, Rodger Mason, :
James Petaccio, Joseph Visinky, :
Annette Kowalewski, Richard Ellers, :
Jawad Salameh, Prison Health :
Services, Inc. and Pennsylvania :
Department of Corrections :

# **O R D E R**

AND NOW, this 27<u>th</u> day of <u>July</u>, 2016, the orders of the Court of Common Pleas of Somerset County at No. 640 CIVIL 2008 are affirmed.

_____
DAN PELLEGRINI, Senior Judge