Jerome M. Britton,  :
               Petitioner  :
   :
          v.  :
   :
Pennsylvania Board of Probation  :
and Parole,  :   No. 2101 C.D. 2014
          Respondent  :   Submitted: October 2, 2015


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE MARY HANNAH LEAVITT, Judge[1]
              HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                    FILED: March 14, 2016


      Jerome M. Britton (Britton), an inmate at State Correctional Institution – Mahanoy, petitions this Court for review of the Pennsylvania Board of Probation and Parole's (Board) November 3, 2014 order denying his request for administrative relief. Britton's counsel, Kent D. Watkins, Esquire (Counsel), has filed a petition to withdraw representation (Withdrawal Petition) and submitted a no-merit letter in support thereof. After review, we grant Counsel's application and affirm the Board's order.

      On June 30, 2011, Britton was paroled from a 7½ to 15-year sentence for the manufacture, sale, delivery or possession with the intent to deliver a controlled substance and contraband/controlled substance to a community corrections center. As a condition of parole, Britton agreed: "I expressly consent to the search of my person, property and residence, without a warrant by agents of the [Board]. Any

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

items, in the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process." Certified Record (C.R.) at 24. Britton also agreed to the special condition that he "SHALL NOT POSSESS AMMUNITION UNDER ANY CONDITION OR FOR ANY REASON." C.R. at 19, 26. At that time, his maximum sentence release date was January 17, 2017. Britton was released from the community corrections center on September 7, 2011 under an approved home plan, subject to the same parole conditions.

On December 17, 2012, Board agents visited Britton's home and Harrisburg City Police (Police) conducted a warranted search of the premises. According to the Board's Supervision History Report:

> Eventually the search warrant arrived, and the Police asked us to help them search due to limited manpower. Upon conducting the search, [Britton's Supervising Board Agent Aaron Geedey (Agent Geedey)] found an American/Russian 7.62 [r]ifle and a loaded magazine in the basement in an empty box. . . . [Board] Agent Ross then found a MAC-11 handgun in the basement under the empty boxes. [Board] Agent Welsh and [Police] Detective Heffner found a Smith and Wesson 9 mm handgun in the glove box of the car [Britton was known to use, and which Britton's mother permitted them to search], a loaded magazine, and one 9 mm round on the passenger side of the door. During [the] search [Board] Agent Hendrickson searched a gray hoodie found in the dining room. In the pocket she found a baggy with what was believed to be a large crack cocaine rock. With that was a smaller baggy also containing what was believed to be a crack rock. In a separate pocket of that same gray hoodie she located a bag of marijuana. On the dining room table in a bowl two razor blades were found covered with white powder residue. Agent Hendrickson located a third razor blade on the TV stand in the living room also containing white powder residue. Next to the TV stand in the living room was a cardboard box containing a stun gun. [Board] Supervisor [Peter] Hans [(Supervisor Hans)] found a bag on top of the kitchen cabinets that contained very small ziplock baggies typically used for selling drugs and rubber gloves.

2

> Supervisor Hans also informed Detective Lau that he recovered the **assault rifle [American/Russian 7.62x39] round that was laying on the television stand**.

C.R. at 45 (emphasis added). The Police arrested Britton and charged him with receiving stolen property; two counts of possession of firearms by a convicted felon; manufacturing, delivering or possessing controlled substances with the intent to deliver; and, possession with intent to use drug paraphernalia. *See* C.R. at 33-43, 46, 54. He was placed in Dauphin County Prison and did not post bail. The Board issued a warrant to commit and detain Britton due to the new criminal charges. In addition, because the 7.62x39 round was found at Britton's premises, he was also charged by the Board with violating the parole condition prohibiting him from possessing ammunition. *See* C.R. at 46.

The Board scheduled a detention hearing for December 26, 2012 that was continued at Britton's request. *See* C.R. at 47. On January 30, 2013, federal authorities indicted Britton in the United States (U.S.) District Court for the Middle District of Pennsylvania (U.S. District Court) on the charges arising from the December 17, 2012 search. *See* C.R. at 71. As a result, on March 27, 2013, Britton's state criminal charges were withdrawn. *See* C.R. at 42.

On September 4, 2013, Britton was found guilty of possessing the American/Russian 7.62 rifle, and was sentenced on January 28, 2014 to "100 MONTHS [FEDERAL INCARCERATION] TO RUN CONSECUTIVELY [WITH] ANTICIPATED SENTENCE IMPOSED ON STATE PAROLE REVOCATION."[2] C.R. at 50; *see also* C.R. at 55, 74-76. Agent Geedey received the official conviction verification on February 26, 2014. *See* C.R. at 64, 95-96, 99.

---

[2] Britton was acquitted of the other charges. *See* C.R. at 70.

3

A revocation hearing was held before a hearing examiner on April 10, 2014,[3] at which Britton was represented by Counsel. *See* C.R. at 50-51, 56. At the revocation hearing, the Board entered Britton's January 28, 2014 conviction on the record, and Agent Geedey explained that although Britton was found guilty on September 4, 2013, conviction in federal court occurs at sentencing.[4] Supervisor Hans testified that within seconds of entering Britton's premise on December 17, 2012, he observed the round matching the American/Russian 7.62x39 gun that Britton was convicted of illegally possessing "sitting on a TV stand in plain view." C.R. at 104.

By April 25, 2014 decision, the Board recommitted Britton as a convicted parole violator to serve 24 months backtime, and as a technical parole violator to serve 6 months backtime.[5] *See* C.R. at 58-59, 128-129. Britton was not given credit for time spent at liberty on parole. *See* C.R. at 58. His maximum sentence release date was changed to July 5, 2019. *See* C.R. at 129.

By May 20, 2014 letter to the Board, Britton requested administrative relief because: (1) the Board held his parole revocation hearing more than 7 months after his conviction; (2) the Board relied solely on a Board agent's testimony as proof that he possessed ammunition; (3) the Board erred by holding that the ammunition violation was separate from his firearms possession charge; (4) the Board erred by imposing a sanction that exceeds his maximum sentence; and, (5) his revocation

---

[3] On March 5, 2014, Britton requested a revocation hearing before a panel. Because the originally-scheduled March 27, 2014 hearing date was not a panel hearing day, the hearing was held on April 10, 2014.

[4] At the hearing, Britton and his attorney Michael Rentschler (Attorney Rentschler) argued that the Department of Corrections miscalculated his maximum sentence date. *See* C.R. at 86-89. The hearing examiner informed Britton that sentence calculation was not an issue over which he had jurisdiction.

[5] The 6 months was to be served concurrently with the 24 months. *See* C.R. at 59.

4

hearing counsel was ineffective. *See* C.R. at 130-148. By November 3, 2014 decision, the Board denied Britton administrative relief. *See* C.R. at 149-151.

Britton, pro se, appealed from the Board's decision to this Court.[6] In his petition for review, Britton averred that the Board "erred in failing to consider [his] request for Administrative Relief[,]" and stated:

> Given the Board[']s unexplained departure from it[]s conventual [sic] practice, and it[]s failure to respond to proposed findings of <u>FACT</u>, This Court, as a matter of Equity, must reverse the Board's Decision, finding that the Revocation Hearing was untimely and [Britton's] right to a speedy Revocation Hearing has been violated and the only remedy is Vacation of the Revocation Order and the dismissal with prejudice of the violations.

Pet. for Review at 4-5.[7] By December 5, 2014 order, this Court, *inter alia*, appointed Counsel for Britton's appeal.

In his March 2, 2015 no-merit letter, Counsel detailed the history of Britton's claim, and concluded that Britton's appeal has no merit. Counsel No-Merit Letter at 8. The no-merit letter further notified the Court and Britton that Counsel would file the Withdrawal Petition, and advised Britton of his right to retain substitute counsel or to proceed pro se. On March 4, 2015, this Court ordered Counsel's Withdrawal Petition to be considered along with the merits of Britton's appeal.

We will first consider Counsel's Withdrawal Petition. Pursuant to *Commonwealth v. Turner,* 544 A.2d 927 (Pa. 1998) and *Commonwealth v. Finley,*

---

[6] "Our review in a parole revocation action is limited to determining whether the findings were supported by substantial evidence, whether constitutional rights were violated, or whether the Board committed an error of law." *Flowers v. Pa. Bd. of Prob. & Parole*, 987 A.2d 1269, 1271 n.3 (Pa. Cmwlth. 2010).

[7] The Board filed a motion to suppress/strike Britton's petition for review for failure to conform to the Pennsylvania Rules of Appellate Procedure. By August 5, 2015 order, this Court denied the Board's motion.

550 A.2d 213 (Pa. Super. 1988) (*Turner/Finley),* an attorney seeking to withdraw representation must review the case zealously, and

> then submit a 'no-merit' letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa. Super. 2007). "[C]ounsel must fully comply with the procedures outlined in *Turner* to ensure that each of the petitioner's claims has been considered and that counsel has a substantive reason for concluding that those claims are meritless." *Hont v. Pa. Bd. of Prob. & Parole*, 680 A.2d 47, 48 (Pa. Cmwlth. 1996). "Counsel must also send to the petitioner: (1) a copy of the 'no-merit' letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed [pro se] or by new counsel." *Wrecks*, 931 A.2d at 721. "[T]he [C]ourt does not reach an examination of the merits of the appeal until it is satisfied that counsel has discharged its responsibility in complying with the technical requirements of . . . a no-merit letter." *Wesley v. Pa. Bd. of Prob. & Parole*, 614 A.2d 355, 356 (Pa. Cmwlth. 1992). Accordingly, we review Counsel's no-merit letter to determine whether it properly lists Britton's issues and explains why the appeal lacks merit.

In Britton's amended brief, he lists the following issues for this Court's review: (1) whether the Board timely held Britton's revocation hearing; (2) whether the Board's agents had reasonable suspicion to search Britton's residence on December 17, 2012; (3) whether the Board erred by finding that Britton's possession of ammunition was separate from his firearms conviction; (4) whether the Board erred by relying solely on an agent's testimony about his possession of ammunition; (5) whether the Board erred by imposing a sanction that exceeded his maximum

6

sentence release date; and, (6) whether Britton's revocation hearing counsel was ineffective. Because Britton's reasonable suspicion to search issue was not raised in his petition for review, it is waived and will not now be considered by this Court.[8]

Counsel's letter reflects a "diligent review of the case," addressing the issues raised and explaining why those issues do not have merit.[9] *Wrecks*, 931 A.2d at 721. The letter sets forth the proper standard of review, and explains the basis for Counsel's statement that the Board properly denied Britton's appeal. Further, the record demonstrates that Counsel sent Britton the required documents and Britton was notified of his right to obtain counsel or proceed pro se. Finding that Counsel's letter satisfies the requirements of *Turner* and *Finley*, we review the merits of Britton's appeal.

---

[8] The law is well settled that issues not raised before the Board either at the revocation hearing or in the petitioner's administrative appeal are waived and cannot be considered for the first time on appeal. The law is equally well settled that **issues not raised in a petition for review are waived and will not be addressed by this Court**.

*Chesson v. Pa. Bd. of Prob. & Parole*, 47 A.3d 875, 878 (Pa. Cmwlth. 2012) (citations omitted; emphasis added).

[9] Britton was represented by counsel at the parole revocation hearing. His hearing counsel raised the issue of whether the parole officers had reasonable suspicion to conduct the search. The Board nevertheless revoked Britton's parole. Britton did not raise the reasonable suspicion to search issue in either his request to the Board for administrative relief or his petition for review to this Court. In *Tillery v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth. No. 518 C.D. 2013, filed March 12, 2014 and amended April 24, 2014), appointed counsel reviewed the history of Tillery's case and relevant legal authority, including an issue not properly preserved before the Board. This Court held that "in addressing the petition to withdraw and the petition for review, **we limit our consideration to only those issues that Tillery raised before the Board** in his administrative appeal." *Id.* at 2 n.5 (emphasis added). Thus, although appointed counsel may review issues not raised before the Board, those issues cannot be resurrected by appointed counsel, and this Court will not consider them. Accordingly, Counsel did not err by not addressing Britton's reasonable suspicion to search issue in his no-merit letter.

We acknowledge that *Tillery* is an unreported opinion, and that this Court's unreported memorandum opinions may not be cited as binding precedent; however, they may be cited "for [their] persuasive value[.]" Section 414 of the Commonwealth Court's Internal Operating Procedures. *Tillery* is cited herein for its persuasive value.

7

Britton first argues that the Board held his parole revocation hearing beyond the prescribed time. Specifically, he contends that since his September 4, 2013 guilty verdict "establishe[d] the single fact of a parole violation," and he was returned to state custody on September 5, 2013, his hearing which did not take place until April 10, 2014, was more than 7 months late. Britton Amended Br. at 7.

"When a parolee alleges that the Board failed to hold a timely revocation hearing, the Board bears the burden of proving that the hearing was timely." *Lawson v. Pa. Bd. of Prob. & Parole*, 977 A.2d 85, 87 (Pa. Cmwlth. 2009). "Determining whether a revocation hearing was timely is a straightforward inquiry that is governed by Board regulation." *Id.* Section 71.4(1) of the Board's Regulations, states:

> A revocation hearing shall be held within 120 days from the date the Board received official verification of . . . the guilty verdict at the highest trial court level except as follows:
>
> (i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-[s]tate, confinement in a [f]ederal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, . . . 314[]A.2d 842 ([Pa.] 1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a [s]tate correctional facility.
>
> (ii) A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the *Rambeau* decision shall be deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver.

37 Pa. Code § 71.4(1). Thus,

> [t]he test for determining the timeliness of a revocation hearing held before the Board is whether, after subtracting the periods of time not chargeable to the Board,[10] the

_____

[10] Section 71.5(c) of the Board's Regulations provides, in pertinent part:

remaining time exceeds 120 days from either . . . the official verification of the new conviction or of the offender's return to a state correctional institution.

*Koehler v. Pa. Bd. of Prob. & Parole*, 935 A.2d 44, 50 (Pa. Cmwlth. 2007).

According to the record, Britton was held in Dauphin County prison on the Board's detainer from December 17, 2012 until January 30, 2013, and then on his state charges until they were withdrawn. *See* C.R. at 42, 94-95, 125. Thereafter, Britton was taken by federal authorities under a federal judicial writ (judicial writ) on April 23, 2013 for a suppression hearing and returned to SCI-Camp Hill the same day. *See* C.R. at 95, 125, 145. Britton was also taken under a judicial writ into federal custody from September 3 to September 5, 2013 for trial, and then again from January 17 to February 6, 2014 for sentencing. *See* C.R. at 125, 143.

> [I]n this case, [Britton], while serving his sentence in a state correctional facility, was transferred to . . . enter his plea to the federal charges pursuant to a writ issued by the federal court. A judicial writ has been defined as 'requiring a person to appear at a specified time and place . . . .' *In re Simon,* 297 F. 942, 944 (2nd Cir.[]1924) (citations omitted). When a prisoner is detained pursuant to a writ for the

---

In determining the period for conducting hearings . . . , there shall be excluded from the period, a delay in any stage of the proceedings which is directly or indirectly attributable to one of the following:

(1) The unavailability of a parolee or counsel.

(2) Continuances granted at the request of a parolee or counsel, in which case the Board is not required to reschedule the hearing until it receives a written request to reschedule the hearing from the parolee or counsel.

. . . .

(5) An event which could not be reasonably anticipated or controlled by the Board, including, but not limited to, illness, injury, acts of nature and prison or civil disorder.

37 Pa. Code § 71.5(c).

purposes of presenting him to the court on new criminal charges, the prisoner is

> considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person. The receiving sovereign[-in this case, the federal government-] is, therefore, considered simply to be 'borrowing' the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him.

> *Ruggiano v. Reish,* 307 F.3d 121, 125 n.[]1 (3rd Cir.[]2002). Although the writ in the case *sub judice* is not included in the record, it is clear from the record that the purpose of [Britton's] transfer was to enable him to appear before the federal court to enter his plea to the federal charges. Consequently, although [Britton] was physically in the care of other authorities, he technically never left the Board's jurisdiction. *Montgomery* [*v. Pa. Bd. of Prob. & Parole*, 808 A.2d 999 (Pa. Cmwlth. 2002)]. The judicial writ did not release [Britton] to the federal authorities for the purpose of serving a federal sentence. Rather, it merely allowed [Britton] to enter his guilty plea to the federal crimes with which he was charged. This does not constitute 'confinement outside the jurisdiction of the Department of Corrections.'

*Morgan v. Pa. Bd. of Prob. & Parole*, 814 A.2d 300, 303 (Pa. Cmwlth. 2003); *see also Burno v. Pa. Bd. of Prob. & Parole*, 67 A.3d 1280 (Pa. Cmwlth. 2013).

Because Britton never left the state's jurisdiction, the test for determining whether Britton's parole revocation hearing was timely is whether it was "held within 120 days from the date the Board received official verification of . . . the guilty verdict." 37 Pa. Code § 71.4(1). "Official verification" is defined in Section 61.1 of the Board's Regulations as the **"[a]ctual receipt by a parolee's supervising parole agent** of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa. Code § 61.1 (italics omitted; bold emphasis added). Thus, Britton's argument

10

that his parole revocation hearing was triggered by the September 4, 2013 verdict or his September 5, 2013 return to SCI-Camp Hill is meritless. Based upon the record evidence, the official verification of Britton's federal conviction was received by Agent Geedey on February 26, 2014. Because the revocation hearing was held 44 days later, on April 10, 2014, the revocation hearing was timely.

Britton next contends that the Board erred by finding that his possession of ammunition was separate from his firearms conviction. He specifically avers, based upon *Rivenbark v. Pennsylvania Board of Probation and Parole*, 501 A.2d 1110 (Pa. 1985), that because "the record of this matter does not demonstrate an independent violation of parole, separate in time, from the commission of the crime," he was improperly "recommitted as a technical parole violator based upon an act constituting a new crime of which he was convicted."[11] Britton Amended Br. at 10. Essentially, he claims that the Board imposed two separate recommitment periods – one for the technical parole violation and one for the convicted parole violation – for the same act.

Section 6138(c)(1) of the Prisons and Parole Code (Parole Code) describes a technical parole violator as "[a] parolee under the jurisdiction of the [B]oard who violates the terms and conditions of his parole, **other than by the commission of a new crime of which the parolee is . . . found guilty by a judge or jury** . . . ." 61 Pa.C.S. § 6138(c)(1) (emphasis added). Accordingly, "[i]n *Threats* [*v. Pennsylvania Board of Probation and Parole*, 553 A.2d 906 (Pa. 1989),] the [Pennsylvania Supreme] Court clarified *Rivenbark* to require a determination of whether the technical parole violation is also a criminal offense **for which the**

---

[11] Britton expounded: "Moreover, the Board was unable to enter the rifle round into evidence. One can only infer that this is the result of the Board[']s inability to take custody of the rifle round **due to the round being part of the conviction**." Britton Amended Br. at 9-10 (emphasis added).

**parolee was convicted**.” *Amaker v. Pa. Bd. of Prob. & Parole*, 576 A.2d 50, 52 (Pa. 1990) (emphasis added).[12]

As a condition of his parole, Britton expressly agreed that he “SHALL NOT POSSESS AMMUNITION UNDER ANY CONDITION OR FOR ANY REASON.” C.R. at 19, 26. Britton’s technical parole violation was his possession on December 17, 2012 of **ammunition** in violation of his parole conditions. The record evidence clearly establishes that Britton’s federal conviction was for a felon in possession of a firearm on December 17, 2012, in violation of Section 922(g) of the U.S. Code.[13] *See* C.R. at 64, 70, 139. We acknowledge that Section 922(g) of the U.S. Code makes it unlawful for a felon “to . . . possess . . . any firearm or ammunition[.]” 18 U.S.C. § 922(g). However, use of the term “or” rather than “and” in that context means that the presence of ammunition is not also a required element of a firearm possession. Moreover, Section 921(a) of the U.S. Code separately defines “firearms” and “ammunition.” A “[f]irearm” includes “(A) any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.” 18 U.S.C. § 921(a)(3). Section

---

[12] In [*Amaker*,] the technical violation, consumption of alcohol, is not an independent basis for the criminal conviction. The convicted violation was based upon appellant’s conviction for [driving under the influence of alcohol (DUI)], which involves the additional element of operating a motor vehicle. *See, Threats* . . . , 553 A.2d at 909 (technical violation for possession of a weapon, a knife, was not co-extensive with a conviction for robbery). Thus, the same act was not used as a basis for a technical violation and a convicted violation, and the Board’s recommitment of appellant for both types of violations was correct.

*Amaker*, 576 A.2d at 52.

[13] Section 922(g) of the U.S. Code states, in pertinent part: “It shall be unlawful for any person-- . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . . to . . . possess . . . any firearm or ammunition[.]” 18 U.S.C. § 922(g).

921(a)(17)(A) of the U.S. Code defines "ammunition" as "ammunition or cartridge cases, primers, bullets, or propellant powder designed **for use in any firearm**." 18 U.S.C. § 921(a)(17)(A) (emphasis added).

A similar distinction is made under state law. Britton was initially charged as a felon in possession of a firearm under Section 6105(a)(1) of the Pennsylvania Uniform Firearms Act of 1995 (PUFA),[14] which states: "A person . . . whose conduct meets the criteria in subsection (c) shall not possess . . . a firearm in this Commonwealth."[15] 18 Pa.C.S. § 6105(a)(1). The PUFA defines "[f]irearm" as "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches." 18 Pa.C.S. § 6102 (emphasis omitted). The definition does not expressly include ammunition. Although neither the Board's Regulations nor PUFA define the term "ammunition," this Court has held that "[w]here a court needs to define an undefined term, it may consult definitions in statutes, regulations or **the dictionary** for guidance, although such definitions are not controlling." *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006) (emphasis added). According to *Merriam-Webster's Collegiate Dictionary* (11th ed 2004), "ammunition" is defined as "1a: the projectiles with their fuses, propelling

---

[14] 18 Pa.C.S. §§ 6101-6162.

[15] Section 6105(c) of the PUFA provides:

> [T]he following persons shall be subject to the prohibition of subsection (a): . . . A person who has been convicted of an offense under the act . . . known as The Controlled Substance, Drug, Device and Cosmetic Act, [Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 – 780-144,] or any equivalent [f]ederal statute . . . that may be punishable by a term of imprisonment exceeding two years.

18 Pa.C.S. § 6105(c).

13

charges, or primers **fired from guns**[;] b: CARTRIDGES[.]" *Id.* at 41 (emphasis added). This definition is consistent with the federal statute.

Thus, it is evident that a firearm and ammunition are separate items under federal and state law, and the federal authorities did not charge and/or try Britton for possession of the latter. *See* C.R. at 64, 70, 139. Accordingly, the Board did not err by finding that Britton's possession of ammunition on December 17, 2012 in violation of his parole conditions was independent of and separate in time from his federal firearm conviction.

Britton also asserts that the Board erred by relying solely on an agent's testimony relating to his possession of ammunition. Britton further contends that "[t]he rifle round which was recovered from [Britton's] residence only establishes that it was recovered . . . [rather than it] was possessed by [Britton]." Britton Amended Br. at 9.

"[T]he Board must prove by a preponderance of the evidence that [the parolee] violated the terms and conditions of his parole, and that standard requires such proof that would lead the fact finder to determine that the existence of the contested fact is more probable than its nonexistence." *Jackson v. Pa. Bd. of Prob. & Parole*, 885 A.2d 598, 602 (Pa. Cmwlth. 2005). Further, "[a] parolee 'must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or if he did, that circumstances in mitigation suggests that the violation does not warrant revocation.'" *McKenzie v. Pa. Bd. of Prob. & Parole*, 963 A.2d 616, 620 (Pa. Cmwlth. 2009) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 488 (1972)). "In parole violation proceedings coming under its exclusive jurisdiction, the Board is the fact-finding agency. Therefore, matters of witness credibility and evidentiary weight are solely for the Board's discretion." *Falasco v. Pa. Bd. of Prob. & Parole*, 521 A.2d 991, 995 (Pa. Cmwlth. 1987).

In this case, the Board's April 25, 2015 decision reflects that the evidence the Board relied upon to establish Britton's technical parole violation consisted of "TESTIMONY OF PAROLE AGENT." C.R. at 128. Supervisor Hans testified that he observed the subject ammunition in plain view on the TV stand in Britton's living room on December 17, 2012. Britton did not offer evidence to dispute that testimony. Rather, he claims that the evidence did not prove that he "possessed" the ammunition.

Actual physical possession by a parolee of a prohibited item is not necessary for a parole condition violation to occur; rather, constructive possession is sufficient. *Smalls. v. Pa. Bd. of Prob. & Parole*, 823 A.2d 274 (Pa. Cmwlth. 2003); *Nickens v. Pa. Bd. of Prob. & Parole*, 502 A.2d 277 (Pa. Cmwlth. 1985).

> Constructive possession is 'a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not.' *Commonwealth v. Mudrick, . . .* 507 A.2d 1212, 1213 ([Pa.] 1986). Constructive possession entails the power to control the contraband and the intent to exercise that control. *Commonwealth v. Macolino, . . .* 469 A.2d 132, 134 ([Pa.] 1983). It may be inferred from the totality of the circumstances using circumstantial evidence. *Macolino, . . .* 469 A.2d at 134. Constructive possession may be found 'in one or more actors where the item in issue is in an area of *joint control and equal access.*' *Commonwealth v. Valette,* 613 A.2d 548, 550 ([Pa.] 1992) (emphasis added).

*Manley v. Fitzgerald*, 997 A.2d 1235, 1239 (Pa. Cmwlth. 2010). The *Manley* Court found that

> [i]n every case examined since *Macolino* in 1983, a defendant who lived in the dwelling where the [prohibited items] were found *and* who had access to the specific places in the dwelling where [they] were located was found to have constructively possessed them, *irrespective* of how

many other people also had equal access to [them] or if [they] were hidden.

*Id.* at 1240 (footnote omitted).

Here, the Board did not err by relying solely on Supervisor Hans' undisputed eyewitness testimony to determine that it was more probable than not that Britton possessed ammunition on December 17, 2012 in violation of his parole conditions.

Britton next argues that the Board erred by imposing a sanction that exceeded his maximum sentence release date. Section 6138 of the Parole Code states, in pertinent part:

> **(a) Convicted violators.**--
>
> (1) A parolee under the jurisdiction of the [B]oard released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is . . . found guilty by a judge or jury . . . , may at the discretion of the [B]oard be recommitted as a parole violator.
>
> (2) If the parolee's recommitment is so ordered, the parolee **shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted** and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.
>
> (2.1) The [B]oard may, in its discretion, award credit to a parolee recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:
>
> (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) or a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

(ii) The parolee was recommitted under [S]ection 6143 (relating to early parole of inmates subject to [f]ederal removal order).

. . . .

(4) The period of time for which the parole violator is required to serve shall be computed from and begin on the date that the parole violator is taken into custody to be returned to the institution as a parole violator.

. . . .

(5.1) If the parolee is sentenced to serve a new term of total confinement by a [f]ederal court . . . because of a verdict . . . , the parolee shall serve the balance of the original term before serving the new term.

. . . .

**(c) Technical violators.--**

(1) A parolee under the jurisdiction of the [B]oard who violates the terms and conditions of his parole, other than by the commission of a new crime of which the parolee . . . found guilty by a judge or jury . . . , may be detained pending a hearing before the [B]oard or waiver of the hearing or recommitted after a hearing before the [B]oard or a waiver of the hearing. Detention and recommitment under this paragraph shall be in a community corrections center or community corrections facility, unless the [B]oard determines that one of the following conditions is present:

. . . .

(v) There exists an identifiable threat to public safety, and the parolee cannot be safely diverted to a community corrections center or community corrections facility.[16]

(1.1) If the [B]oard determines that a condition under paragraph (1) applies, the parolee shall be detained in or recommitted to a [s]tate correctional institution or contracted county jail.

---

[16] The Board expressly held that Britton was a threat to the public's safety. *See* C.R. at 59, 128.

17

(2) If the parolee is recommitted under this subsection, the parolee shall be given credit for the time served on parole in good standing but with no credit for delinquent time and may be reentered to serve the remainder of the original sentence or sentences.

(3) The remainder shall be computed by the [B]oard from the time the parolee's delinquent conduct occurred for the unexpired period of the maximum sentence imposed by the court without credit for the period the parolee was delinquent on parole. The parolee shall serve the remainder so computed from the date the parolee is taken into custody on the warrant of the [B]oard.

61 Pa.C.S. § 6138 (text emphasis added). We recognize "that the Board is not permitted to impose backtime which exceeds the entire remaining balance of [a] parolee's unexpired term. The Board can only require that a parolee serve the remaining balance of his unexpired term since the Board does not have the power to alter a judicially-imposed sentence." *Yates v. Pa. Bd. of Prob. & Parole*, 48 A.3d 496, 502 (Pa. Cmwlth. 2012) (quoting *Savage v. Pa. Bd. of Prob. & Parole*, 761 A.2d 643, 645 (Pa. Cmwlth. 2000) (citation omitted)).

However, "when a parolee is recommitted due to criminal conviction, his maximum sentence date may be extended to account for all street-time,[17] regardless of good or delinquent standing." *Richards v. Pa. Bd. of Prob. & Parole*, 20 A.3d 596, 599 (Pa. Cmwlth. 2011). Moreover, the Pennsylvania Supreme Court has specifically held that the Board's authority to extend maximum term expiration dates under such circumstances does not usurp the courts' sentencing functions, or violate a parolee's due process rights. *Gaito v. Pa. Bd. of Prob. & Parole*, 412 A.2d 568 (Pa. 1980).[18] Finally, "[a]s long as the period of recommitment is within the

---

[17] "'Street time' is a term for the period of time a parolee spends at liberty on parole." *Dorsey v. Pa. Bd. of Prob. & Parole*, 854 A.2d 994, 996 n.3 (Pa. Cmwlth. 2004).

[18] *Gaito* was based upon Section 21.1 of what was commonly known as the Parole Act, Act of August 6, 1941, P.L. 861, *as amended*, added by Section 5 of the Act of August 24, 1951, P.L.

presumptive range for the violation, the Commonwealth Court will not entertain challenges to the propriety of the term of recommitment." *Smith v. Pennsylvania Bd. of Prob. & Parole*, 574 A.2d 558, 560 (Pa. 1990).

The presumptive recommitment ranges for technical parole violations are set forth in Section 75.4 of the Board's Regulations, 37 Pa. Code § 75.4, which makes the presumptive range for a violation of a special parole condition, like Britton's ammunition prohibition condition, 3 to 18 months. Therefore, Britton's recommitment to serve 6 months backtime for violating his special parole condition was well within the presumptive range.

The presumptive ranges of parole backtime for convicted parole violations are specified in Section 75.2 of the Board's Regulations, 37 Pa. Code § 75.2. With respect to convicted parole violation recommitment ranges,

> [t]he severity ranking of crimes listed in [Section] 75.2 [of the Board's Regulations] (relating to presumptive ranges for convicted parole violations) is not intended to be exhaustive, and the most closely related crime category in terms of severity and the presumptive range will be followed if the specific crime which resulted in conviction is not contained within the listing.

---

1401, *formerly* 61 P.S. § 331.21a(a), repealed by the Act of August 11, 2009, P.L. 147. Section 21.1(a) of the Parole Act similarly stated:

> Any parolee under the jurisdiction of the [Board] released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which . . . he pleads guilty . . . in a court of record, may, at the discretion of the [B]oard, be recommitted as a parole violator. If his recommitment is so ordered, **he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole** . . . .

(Emphasis added).

19

37 Pa. Code § 75.1(e). Here, Britton was recommitted by the Board to serve 24 months based upon his federal conviction for being a felon in possession of a firearm. Pursuant to Section 75.1(e) of the Board's Regulations, the Board deemed a violation of the PUFA the most closely related crime category to the felon in possession of a firearm charge. Section 75.2 of the Board's Regulations provides that **any** violation of the PUFA has an 18 to 24-month presumptive range. *See Mione v. Pa. Bd. of Prob. & Parole*, 709 A.2d 440, 442 (Pa. Cmwlth. 1998). Therefore, Britton's recommitment to serve 24 months backtime for his convicted parole violation was within the presumptive range.

Further, the Board's imposition of Britton's recommitment terms do not exceed his maximum sentence release date. When Britton was paroled on June 30, 2011, his maximum sentence release date was January 17, 2017. Thus, he had 2,228 days remaining to be served on his original sentence. Because Britton was incarcerated solely on the Board's detainer between his arrest on December 17, 2012 and January 30, 2013 federal indictment, he was entitled to backtime credit for those 44 days. *See* C.R. at 126; *see also Hines v. Pa. Bd. of Prob. & Parole*, 420 A.2d 381 (Pa. 1980); *see also Gaito*. Subtracting 44 days from 2,228 days leaves 1,984 days remaining for Britton to serve on his original sentence when he violated parole and was not given credit for his street time. Adding 1,984 days to January 29, 2014 when Britton was sentenced on his federal charges and was eligible for recommitment, the Board properly recalculated Britton's maximum sentence release date as July 5, 2019. Further, during Britton's 24-month recommitment, he will have served approximately 730 days (365 days x 2), which will leave him with approximately 1,254 days remaining to be served on his original sentence when his recommitment period ends. Thus, it is clear based on this record that the Board did not impose an illegal recommitment term, nor did its recommitment exceed Britton's original sentence.

Finally, Britton maintains that his revocation hearing counsel was ineffective. He specifically contends that Attorney Rentschler not only failed to obtain Britton's conviction verification to establish Britton's revocation hearing trigger date, but he failed to make a hearsay objection to Supervisor Hans' testimony regarding the ammunition round, and such "errors were so serious that there is reasonable probability that but for [Attorney Rentschler's] errors, the result of the proceed[ing] would have been different." Britton Amended Br. at 10.

There is no question that "[i]n parole revocation proceedings, a parolee has a right to effective assistance of counsel." *Dorsey v. Pa. Bd. of Prob. & Parole*, 573 A.2d 628, 629 (Pa. Cmwlth. 1990). However,

> the proper procedure for raising the issue of ineffective assistance of counsel is to **file a petition before the Board, even if the case is on appeal**. The necessity of having the Board first consider the matter is that this [C]ourt is not the proper forum to first raise the issue.

*Scott v. Pa. Bd. of Prob. & Parole*, 739 A.2d 1142, 1145 (Pa. Cmwlth. 1999) (emphasis added). The purpose for that procedure is a practical one in that the parolee has the burden of proving his ineffective assistance case, *Larkin v. Pa. Bd. of Prob. & Parole*, 555 A.2d 954 (Pa. Cmwlth. 1989), and the Board "already holds evidentiary hearings inside of state correctional institutions . . . and the mechanisms for holding the hearings required to adjudicate [such claims are] already in place." Timothy P. Wile, *Pa. Law of Prob. & Parole* 483 (2nd ed. 2010). Here, because Britton did not petition the Board to hear his ineffective assistance of revocation hearing counsel claim, we have no record upon which to review that claim on appeal.

Notwithstanding, based upon the record in this case, we would hold that the errors Britton claims Attorney Rentschler committed would not support an ineffectiveness claim. A valid ineffective assistance of counsel claim requires a parolee to "show that counsel made errors so serious that he was not functioning as

21

guaranteed by law, **and** that the deficient representation prejudiced the [parolee's] defense." *Larkin*, 555 A.2d at 957 (emphasis added). "To show prejudice sufficient to satisfy the second requirement, a parolee must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *LaCourt v. Pa. Bd. of Prob. & Parole*, 488 A.2d 70, 75 (Pa. Cmwlth. 1985).

As stated previously, it is the Board's receipt of the official verification of Britton's conviction that triggered his revocation hearing. In this case, the official verification Agent Geedey received from the U.S. District Court was presented to the Board. Documentation from any source other than the court in which the conviction took place, including the parolee, is not official verification upon which the Board may rely. *See* 37 Pa. Code § 61.1; *see also Choi v. Pa. Bd. of Prob. & Parole*, 584 A.2d 1092 (Pa. Cmwlth. 1990); *Pa. Law of Prob. & Parole* at 449-50. Thus, Attorney Rentschler obtaining a copy of the verification and/or presenting it at the revocation hearing would not have led to a different result.

Further, Attorney Rentschler did not err by failing to make a hearsay objection to Supervisor Hans' testimony regarding the American/Russian 7.62x39 gun ammunition because it was not hearsay. "Hearsay is defined as a 'statement, other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted.' Pa.R.E. 801(c)." *Yost v. Unemployment Comp. Bd. of Review,* 42 A.3d 1158, 1163 (Pa. Cmwlth. 2012). We acknowledge that "[w]hile hearsay may be admitted in . . . parole revocation hearings, a decision to recommit a parolee as a [technical parole violator] may not be based solely on hearsay evidence." *Grello v. Pa. Bd. of Prob. & Parole*, 477 A.2d 45, 46 (Pa. Cmwlth. 1984). However, since Supervisor Hans attended the hearing and testified subject to cross-examination regarding his direct, personal observation of the ammunition in plain view on the TV stand in Britton's home, his testimony

22

was not hearsay, and a hearsay objection by Attorney Rentschler would not have rendered Supervisor Hans' testimony inadmissible. Thus, the errors Britton claims Attorney Rentschler committed would not support an ineffective assistance of counsel claim.

For all of the above reasons, Counsel's application for leave to withdraw as counsel is granted, and the Board's denial of Britton's appeal is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jerome M. Britton,                          :
                          Petitioner        :
                                            :
            v.                              :
                                            :
Pennsylvania Board of Probation             :
and Parole,                                 :     No. 2101 C.D. 2014
                          Respondent        :

## O R D E R

AND NOW, this 14th day of March, 2016, Kent D. Watkins, Esquire's application for leave to withdraw as counsel is granted, and the Pennsylvania Board of Probation and Parole's November 3, 2014 denial of Jerome M. Britton's administrative appeal is affirmed.

_____
ANNE E. COVEY, Judge